UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

BRYCE BREWER                                                                          PLAINTIFF

V.                              NO. 3:19CV00165-JTR

ANDREW SAUL,
Commissioner of Social Security Administration[1]                    DEFENDANT

## ORDER

### I.    Introduction:

Plaintiff, Bryce Brewer ("Brewer"), applied for disability benefits on March 21, 2011, alleging disability beginning on February 9, 2011.[2] (Tr. at 11). On October 11, 2013, after conducting a hearing, the Administrative Law Judge ("ALJ") denied Brewer's application for benefits. (Tr. at 20). The Appeals Council denied his request for review on January 8, 2015. (Tr. at 1).

Brewer filed a complaint in this Court on February 18, 2015. (Tr. at 1293-1299). The Court reversed, finding that the ALJ failed to resolve a conflict between the hypothetical that the ALJ posed to the Vocational Expert ("VE") and the testimony from the VE that Brewer could perform jobs in the national economy.[3]

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] Brewer's date last insured for the purposes of disability insurance benefits ("DIB") was September 30, 2013, so he must prove disability before that date. (Tr. at 11).

[3] Magistrate Judge Harris recognized the conflict between a hypothetical limiting Brewer to jobs with only "one-to-two step tasks. . . learned and performed by rote, with few variables and little judgment,"

On February 17, 2016, the Appeals Council remanded Brewer's application for benefits for a second hearing pursuant to Judge Harris's Order. (Tr. at 1303). A second hearing was held on June 20, 2016, and an ALJ again denied Brewer's application for benefits on August 3, 2016 (Tr. at 1308-1318).

On February 8, 2017, the Appeals Council remanded the application for benefits for a third hearing after finding that the second ALJ failed to discuss the relevant mental health providers' opinions related to Brewer's depression and anxiety.[4]

A third hearing was held on September 21, 2017, and on October 30, 2017, the third ALJ denied Brewer's application for benefits. (Tr. at 1213-1225). On November 30, 2017, Brewer filed written exceptions objecting to the ALJ's findings. (Tr. at 1439-1452). On May 10, 2019, the Appeals Council denied Brewer's request for review, making the third ALJ's denial of Brewer's application for benefits the

---

and the *Dictionary of Occupational Titles* reasoning levels of 2 to 3 for the jobs identified by the VE. (Tr. at 1293-1299); *Brewer v. Colvin*, NO. 3:15CV00049-PSH (E.D. Ark. Aug. 27, 2015).

[4] During the pendency of this case, four mental health providers have issued opinions about the severity of Brewer's mental problems related to anxiety, depression, and cognitive slowing (as discussed below). The second ALJ only discussed one of those opinions in his decision, which caused the Appeals Council to remand for a third hearing. (Tr. at 1308-1318). In the remand order, the Appeals Council directed the third ALJ to evaluate all of the opinion evidence to determine the severity of Brewer's mental impairments, and to obtain additional mental health evidence, if necessary; the order also directed the third ALJ to reexamine Brewer's Residual Functional Capacity ("RFC") and obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on Brewer's occupational base. (Tr. at 1326-1327).

final decision of the Commissioner. (Tr. at 1204-1209).

For the reasons stated below, the Court [5] affirms the decision of the Commissioner.

## II.  The Commissioner's Decision:

The third ALJ found that Brewer had not engaged in substantial gainful activity from the alleged onset date of February 9, 2011 through the date last insured of September 30, 2013. (Tr. at 1216). At Step Two, the ALJ found that Brewer had the following severe impairments: anoxic brain injury and anxiety disorder. *Id.*

After finding that Brewer's impairments did not meet or equal a listed impairment (Tr. at 1216), the ALJ determined that Brewer had the residual functional capacity ("RFC") to perform work at the light exertional level, except that: (1) he must avoid exposure to hazards such as moving mechanical parts of equipment and unprotected heights, but could otherwise operate motor vehicles or riding lawn mowers; (2) he retains the mental ability to understand, remember, and carry out simple jobs instructions and can make decision or judgments in simple work-related situations; (3) he is able to respond appropriately with co-workers and supervisors, but must avoid interaction with the public; and (4) he can respond appropriately to minor changes in the usual work routine. (Tr. at 1218).

---

[5] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

The ALJ found that, through the date last insured of September 30, 2013, Brewer was unable to perform any past relevant work. (Tr. at 1223). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that, based on Brewer's age, education, work experience and RFC, jobs existed in significant numbers in the national economy which he could perform, including work as housekeeping cleaner and price marker. (Tr. at 1224). Thus, the ALJ concluded that Brewer was not disabled. *Id*.

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

B.   Brewer's Arguments on Appeal

Brewer contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that: (1) the ALJ improperly discredited the medical opinion of Dr. Dan Johnson, Ph.D., a clinical neuropsychologist; and (2) the ALJ did not fully account for Brewer's ventricular tachycardia.

Brewer suffered from mild-to-moderate anxiety and depression during the relevant-time period. At the hearing, Brewer said that medication helped with anxiety and he was not taking any medications for depression. (Tr. at 35-36). He did

not pursue regular specialized psychiatric treatment and he had no inpatient hospitalizations. Brewer was able to do a variety of daily activities: attend to personal care, golf, fish, hunt, play video games, mow his lawn, shop in stores, prepare meals, make house repairs, take care of his two young sons, and take medication with no reminders needed. (Tr. at 31-45). Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). Brewer also said that he passed his real estate agent and real estate appraiser tests. (Tr. at 31-45).

Brewer said that his primary problem was focus and concentration related to a 57-day hospital stay in 2011, which stay was complicated by a lack of oxygen to the brain.[6] (Tr. 260-303-305). Still, Brewer said that if he wrote down instructions and made lists, he really had no problem with work-type tasks. (Tr. at 30-50, 1050-1055). Brewer said he could follow instructions well and could finish what he started. (Tr. at 161-171). Brewer had mostly normal mental status examinations.[7]

Dr. Suzanne Gibbard, Ph.D., examined Brewer on February 9, 2012. (Tr. at

---

[6] On February 9, 2011, Brewer entered the hospital complaining of a sore throat, and he went into septic shock due to a peritonsillar abscess, which was removed. (Tr. at 202-206, 260, 303-305). He had a "stormy hospital course" with multiple organ problems, but Brewer had recovered significantly upon discharge. *Id*.

[7] Brewer only received anxiety and depression medication prescriptions from his PCP (not a mental health provider), and his doctors said he was sometimes noncompliant with treatment, by stopping taking medication which had been prescribed. (Tr. at 221-225, 996-998, 1057-1060, 1198-1199).

1050-1055). Brewer told her his problems were primarily physical, but that he had some cognitive and memory problems. *Id*. He said he had been working some during the relevant time-period for his father's business. *Id*. He showed symptoms of moderate depression and anxiety. *Id*. Brewer told Gibbard that he was nervous at times, but it was not something he couldn't handle. *Id*. Gibbard noted that Brewer had a subdued mood but was cooperative, had logical and relevant thought processes, had well-connected associative skills, and was oriented times three. *Id*. Testing revealed normal fund of information, good immediate recall, and the ability to subtract and make comparisons. *Id*. Gibbard thought cognitive defects may interfere with timeliness on the job. *Id*.

In May 2012, Dr. Jon E. Mourot, Ph.D., a Disability Determination Services consultant, reviewed the medical records, conducted a Psychiatric Review Technique ("PRT") as required by Social Security regulations, and concluded that Brewer had no more than mild-to-moderate limitations in cognitive function for basic work tasks, including concentration, persistence, and pace. (Tr. at 1083-1085). Mourot opined that Brewer could perform semi-skilled work. *Id*. In October 2012, another reviewing psychologist, Dr. Brad Williams, Ph.D., agreed with Mourot's conclusion. (Tr. at 1156).

Brewer relies upon the results of a May 2012 consultative examination by Dr.

Dan Johnson, Ph.D., a clinical neuropsychologist, for his contention that he could not perform even unskilled work, and that he could not perform work that required reaching, grasping, or fingering with his arms and hands. (Tr. at 1170-1180). After conducting a battery of intelligence tests, Dr. Johnson found that Brewer's attention and concentration was "quite poor." *Id*. He found some evidence of depression and anxiety and noted that Brewer tested in the low to average IQ range. *Id*. Brewer had no difficulty understanding normal conversation and test instructions. *Id*. He had no problems communicating his medical history. *Id*. Dr. Johnson noted that abnormal test results are not uncommon and do not necessarily imply brain dysfunction. *Id*. Dr. Johnson did not give an opinion about Brewer's mental function as it relates to work tasks, in the format typically used for these cases. For this reason, his opinion was less than persuasive.

The ALJ evaluated the record as a whole and concluded that the reviewing expert opinions deserved more weight that that of Dr. Johnson, given Brewer's admitted ability to perform a variety of activities that required good mental function.[8] (Tr. at 1220-1225). His noncompliance and improvement with medication also factored into the ALJ's determination. The ALJ fully discussed the four mental

---

[8] *See Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (recognizing that a treating physician's opinion may be discounted and that the record as a whole must be evaluated).

health expert opinions (as directed by the Appeals Council) and incorporated into the RFC the portions of the opinions which were consistent with the medical evidence. Accounting for some evidence of cognitive slowing, the ALJ limited Brewer to unskilled work, which was more restrictive than the RFC for semi-skilled work suggested by Mourot and Williams.

Likewise, the ALJ properly accounted for any alleged arm, hand, or wrist limitations in his decision. First, Brewer did not allege reaching, grasping, gripping, or fingering problems in his application paperwork. (Tr. at 129). *See Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011)(ALJ's decision upheld when claimant did not allege mental impairment on application for benefits). Second, two consultative medical examiners (M.D.s) found no deficits in upper extremity movement or sensory abilities. (Tr. at 1068-1069, 1135). One of those medical doctors found equal grip strength and noticed that Brewer's hands were calloused. *Id*. While Dr. Johnson's upper extremity examination was more specialized, based on his neuropsychology area of expertise, he is not a medical doctor like the reviewing physicians, so the physical limitations he prescribed do not deserve any special weight. Dr. Johnson did find some diminished grip strength and some arm weakness, but certainly this did not impede Brewer from performing a variety of daily activities requiring good upper extremity function (such as making repairs and playing video

games). (Tr. at 158-160). The evidence did not suggest that any upper extremity limitation should have been included in the RFC.

Finally, Brewer's claim that ventricular tachycardia should have been ruled a severe impairment at Step Two is meritless. The ALJ acknowledged the condition (Tr. at 1216), but found that because of documented improvement with treatment, noted non-compliance with prescribed heart medication, and generally normal cardiac examinations, ventricular tachycardia was not a severe impairment (nor was it a necessary consideration in the determination of the RFC). (Tr. at 1057-1068, 1182, 1213-1216).[9] In this respect, the ALJ committed no error.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly evaluated the medical opinions, and he did not err at Step Two.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is AFFIRMED, and Brewer's Complaint is DISMISSED, with prejudice.

---

[9] Brewer told his cardiologist in January 2012 that he had lost his defibrillator transmitter and had not taken Coreg since April 2011. (Tr. at 1057-1060). In September 2013, his cardiologist noted improvement, he told Brewer to diet and exercise, and he told him to follow up in one year. (Tr. at 1182-1187).

DATED THIS 14th day of July, 2020.

>    _____
>    UNITED STATES MAGISTRATE JUDGE